VICTOR J. REAM v. CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY.[1]

February 13, 1925.

No. 24,436.

**Verdict for $12,125 in favor of fireman permanently incapacitated for his
employment or promotion, sustained.**

> Plaintiff was a railroad fireman, 37 years old, earned $200 a month,
> suffered a serious injury to his left arm which, in the opinion of his
> medical witnesses, was permanent in its nature and will always dis-
> able him from following his former occupation, stood in line of promo-
> tion and would have been able to earn $280 a month as an engineer,
> and had lost a substantial sum in wages and the expense of medical
> treatment, at the time of the trial. It is *held* that a verdict of $12,125
> is not excessive.

*Headnote 1. See Damages, 17 C. J. p. 1101, § 425.

Action in the district court for Ramsey county to recover $50,000.
The case was tried before Hanft, J., and a jury which returned a
verdict for $12,125. From an order denying its motion for a new
trial, defendant appealed. Affirmed.

*O'Brien, Horn & Stringer*, for appellant.

*Tautges & Wilder* and *McMeekin, Quinn & Swan*, for respondent.

LEES, C.

Plaintiff was injured while employed by defendant as a fireman,
and brought this action to recover damages. The jury returned
a verdict of $12,125 in his favor. A motion for a new trial, based
solely on the ground that the verdict was excessive, was denied
and this appeal followed.

The accident happened on September 27, 1923. To avoid injury
from an impending collision between two trains, plaintiff jumped
from the locomotive he was firing, while it was running at a speed
of about 40 miles an hour. He was a heavy man and struck the
ground so hard that two of his ribs were fractured and he was

[1]Reported in 202 N. W. 276.

severely bruised in many places. He suffered from general sore-
ness for two or three weeks after the accident and, in the third
week, began to experience severe pain in his left elbow. He com-
plained to the railway surgeon who was treating him, and was told
that he had an attack of rheumatism. The pain increased and the
elbow and arm up to the shoulder were considerably swollen, but
the doctor continued to be of the opinion that plaintiff had rheuma-
tism.

On November 20, 1923, plaintiff employed another physician, who
gave his arm treatment from that time until February 10, 1924,
when he performed an operation which relieved plaintiff from the
severe pain he had suffered for about three months. On April 3,
another operation was performed and, at the time of the trial, plain-
tiff had what is commonly known as a hook arm, with little motion
in the elbow, and could get his left hand to his head only by lifting
it with the right hand. The left shoulder was painful and plain-
tiff was considerably under weight. The physician who attended
him after November 20 found that he was suffering from synovitis,
or an inflammation of the synovial membrane at the elbow joint,
which produced excessive secretion of the synovial fluid. This ac-
counted for the swelling. He also found that the periosteum was
inflamed and that pus had formed between it and the bone. The
first operation was performed to release the pus and remove some
necrotic or dead bone; the second, to remove more necrotic bone
and release pus which had accumulated in the elbow joint. The
result was that the functions of the joint were largely destroyed
and ankylosis, or permanent stiffness, ensued, depriving plaintiff of
at least 75 per cent of the usefulness of his arm. His medical wit-
nesses were of the opinion that the injury to his arm was of a per-
manent nature and that he would never again be able to work as a
fireman.

When injured plaintiff was 37 years old and earned $200 a month.
He was in the line of promotion and eligible to a position as engi-
neer. By reason of seniority rules, he had not yet been given a
regular run as an engineer but made extra runs at times. When
he obtained a regular run, his wages would amount to not less than

$280 a month. If he cannot go back to work as a fireman, he will lose his seniority rights and his chance of becoming an engineer with a regular run.

The trial took place in June, 1924. At that time plaintiff had lost his wages for nine months, or $1,800. His medical expenses amounted to $600, and he will incur future expenses for medical treatment.

In Quinn v. C. M. & St. P. Ry. Co. supra, page 87, we had occasion to discuss the principles by which we are guided in determining whether a verdict approved by the trial judge should be disturbed by this court when the sole ground of attack is that it is so excessive as to indicate passion and prejudice on the part of the jury. The application of the doctrine expressed in that case clearly leads to an affirmance. The pecuniary loss to the plaintiff is greater here and, if the verdict in the Quinn case should stand, there can be no doubt about the result in this case.

Order affirmed.

STONE, J., took no part.